IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Willie Gilmore, #281735, | ) | C/A No.: 1:14-4540-RMG-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Robert Stevenson, III, | ) | |
| | ) | |
| Respondent. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

Willie Gilmore ("Petitioner") is an inmate incarcerated at the Broad River Correctional Institution of the South Carolina Department of Corrections who filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 13, 14]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by March 12, 2015. [ECF No. 15]. The court granted an extension to April 13, 2015. [ECF No. 18]. Petitioner failed to file a response, and the court issued an order on April 15, 2015, directing Petitioner to advise the court whether he wished to continue with his case and to file a response to Respondent's motion by April 29, 2015. [ECF No. 20]. Petitioner filed a response on April 20, 2015. [ECF No. 23]. The matter having been fully briefed, it is ripe for disposition.

Having carefully considered the parties' submissions and the record in this case,

the undersigned recommends that Respondent's motion for summary judgment be granted.

I.     Factual and Procedural Background

The South Carolina Court of Appeals ("Court of Appeals") summarized the facts of this case as follows:

> Gilmore and the victim knew each other for approximately ten years, dated each other for about six months, and lived together in Gilmore's house until three weeks before the crime. The victim testified that on the day of the crime she visited the house to check on furniture she left behind. Gilmore was not home when she arrived, so she talked with another woman for a short while until Gilmore returned. After the other woman left, Gilmore and the victim talked while Gilmore gave her a foot rub. The victim gave Gilmore money to go to the liquor store. Gilmore returned with a pint of gin, which they drank together. After they finished drinking the gin, Gilmore went to the back of the house to speak with a man who had stopped by, and the victim stayed in another room talking to a woman who was with the man. The victim testified that after the man and woman left, Gilmore came running at her in a rage and slapped her two or three times in the face. She later explained that Gilmore was angry because he thought she had said something to the woman about another man. She testified she attempted to leave after being slapped, but Gilmore would not allow it.
>
> The victim then testified to the events of the sexual assault. Gilmore told the victim he wanted to have sex and pulled a knife. He forced her to remove her clothes and to pull a mattress into another room. He then raped her on the mattress. She testified that during the sexual assault he told her: "If I was like I was, Bitch, I would have killed you. You would be dead Bitch," and "I've killed one, and I'll kill again."

[ECF No. 14-7 at 2].

Petitioner was indicted by the Richland County Grand Jury during the August 2006 term of court for criminal sexual conduct, first degree (06-GS-40-2809). [ECF No.

14-3 at 39–40].[1] Megan Lee, Esq. ("Lee") and Mary LaFave, Esq. ("LaFave") represented Petitioner at a jury trial on June 16–18, 2008, before the Honorable J. Michelle Childs, then-Circuit Court Judge. [ECF No. 14-1 at 3 *et seq*.]. The jury found Petitioner guilty as charged. [ECF No. 14-2 at 206–207]. Judge Childs sentenced Petitioner to life without the possibility of parole. *Id.* at 218.

Petitioner appealed his conviction and sentence to the Court of Appeals. [ECF No. 14-4]. On appeal Petitioner was represented by M. Celia Robinson, Appellate Defender, with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. [ECF No. 14-5]. Attorney Robinson filed a merits brief raising the following issues:

1.   Did the trial judge err in refusing to charge the jury as to the lesser included offense of ABHAN?

2.   Did the trial judge err in allowing admission of appellant's alleged statements: "I've killed before and I'll kill again?" and "If I was the way I used to be you would be a dead bitch" where the admission of these statements improperly allowed the State to attack the character of the accused prior to his character being placed in issue, allowed the State to tacitly inform the jury of appellant's prior voluntary manslaughter conviction, and where the admission was in violation of Rule 403, SCRE, in that the probative value of the evidence was far outweighed by the unfairly prejudicial effect?

3.   Did the trial judge err in ruling that evidence of appellant's prior burglary conviction would be admissible against him for impeachment purposes where the State had failed to carry its burden of showing that the prior conviction for burglary in the second degree, entered pursuant to a plea bargain, was appropriate for admission under Rule 609(a)(1), SCRE and the trial judge further erred in failing to advise the accused as to his right to testify or not so that his waiver of his right to testify was not knowing or voluntary and should not be effective to foreclose appellate review?

---

[1] The indictment was amended on February 16, 2007. [ECF No. 14-9 at 6–7].

4.    Did the trial judge err in allowing the State to present the full testimony of State's witness, Hunter, where the State had failed to comply with its duty to disclose and update discovery in violation of the guarantee of due process and to the prejudice of appellant?

[*Id.* at 5]. On November 2, 2011, the Court of Appeals filed a published decision affirming the conviction. [ECF No. 14-7]. The remittitur was issued on November 18, 2011. [ECF No. 14-8].

On January 23, 2012, Petitioner filed an application for post-conviction relief ("PCR") raising claims for ineffective assistance of trial and appellate counsel. [ECF Nos. 14-2 at 220–26; 14-9 at 1–12]. On September 13, 2012, a PCR evidentiary hearing was held before the Honorable J. Ernest Kinard, Jr., Circuit Court Judge, at which Petitioner and his counsel, Mark E. Schnee, Esq., appeared. [ECF Nos. 14-2 at 235–51; 14-3 at 3–29]. On October 21, 2013, Judge Kinard filed an order of dismissal. [ECF No. 14-3 at 30–38].

Petitioner timely filed a notice of appeal. He was represented by Robert M. Pachak, Appellate Defender, with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a *Johnson*[2] petition for writ of certiorari in the South Carolina Supreme Court on or about March 31, 2014. [ECF No. 14-13]. The

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967) to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

petition raised the following issue: "Whether defense counsel was ineffective in failing to adequately advise petitioner of his right to testify?" *Id.* at 3.

On June 4, 2014, Petitioner filed a pro se brief in which he raised the following issue: "Whether the PCR court [erred] in finding that counsel was not ineffective in failing to adequately advise petitioner of his right to testify in his own behalf?" [ECF No. 14-15 at 4]. On August 7, 2014, the South Carolina Supreme Court issued an order denying the petition. [ECF No. 14-16]. The remittitur was issued on August 25, 2014. [ECF No. 14-17].

Petitioner filed this petition for writ of habeas corpus on November 24, 2014. [ECF No. 1-2 at 1].[3]

II.    Discussion

    A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following claims:

**Ground One:**    1. Ineffective Assistance of trial counsel. Failure to attack Grand empanelment for errors.

        Supporting Facts: The lower court's decision was based on unreasonable determination of facts in light of evidence presented in state court for several reason being (1) That the indictment is insufficient, because false and misleading statements was presented to the grand jury thus prejudiced the Petitioner: (2) The Petitioner had not gave a statement that he and the victim had engaged in

---

[3] The petition was received by the court on November 25, 2014, and docketed on December 1, 2014. [ECF Nos. 1; 1-1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition reflects it was deposited in the prison mailing system on November 24, 2014. [ECF No. 1-2 at 1].

sexual intercourse regarding the time of the alleged incident of [occurrence]. The assertion that the Petitioner stating the sexual intercourse was consensual, was solely implicated by the Petitioner trial counsel ..!

**Ground Two:**      Defense counsel was ineffective in failing to adequately advise petitioner of his right to testify in his own behalf.

<u>Supporting Facts:</u> Exculpatory evidence are now, and was available at trial as well as within proximal of both the defense as well as the co counsel at trial, these tangible documentary evidence substantiates that the victim allegation of sexual intercourse between the Petitioner and the victim are so false allegations; also these evidence "corroborates" the Petitioner's innocence; a testimony from the Petitioner at trial would have supported the exculpatory evidence there is not any factor the Petitioner's prior conviction would have impeach the Petitioner. This strategy implemented per the Petitioner's trial attorney within trial was error . . ., and thus did so shift[] the burden of proof upon the Petitioner.

[ECF No. 1 at 5–7].

B.     Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by Fed. R. Civ. P. 56(c), set forth specific facts showing there is a genuine dispute for trial.

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

7

federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

        (A)     the applicant has exhausted the remedies available in the courts of the State; or

8

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266

(S.C. 2007).[4] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845–47 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d

---

[4] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

454 (S.C. 1990). The *McKennedy* court held *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has

11

failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir.), *cert. denied,* 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Coleman,* 501 U.S. at 753–54. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a

default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.  Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an

ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

D.    Analysis

1.    Procedurally-Barred Grounds

As an initial matter, Respondent alleges Petitioner's Ground One is procedurally barred because it was not raised to and ruled upon by the PCR court. The undersigned agrees. Because the claims in Ground One were not raised to or ruled upon in Petitioner's PCR appeal, they were not preserved for review. *See, e.g., Coleman v. Thompson*, 501 U.S. 722 (1991) (holding issue not properly raised to state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996) (holding issues not presented to the state's highest court may be treated as exhausted if it is clear that the

14

claims would be procedurally defaulted under state law if the petitioner attempted to raise them now); *Pruitt v. State*, 423 S.E.2d 127 (S.C. 1992) (holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review); *Plyler v. State*, 424 S.E.2d 477 (S.C. 1992); SCRCP 59(e) (providing avenue for any party to move to alter or amend a judgment); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009) (acknowledging same applied consistently and regularly in South Carolina after *Marlar v. State*). As a result, these claims were not properly presented to the South Carolina appellate courts, which would find them procedurally defaulted if Petitioner attempted to raise them now.  Consequently, federal habeas review of Petitioner's claims in Ground One is barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

2.    Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of this claim. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, these claims are procedurally barred from consideration by this court and should be dismissed. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor

prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding that in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on these claims. Petitioner had a trial in which he raised no objection, had a direct appeal, a PCR hearing, and a PCR appeal in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve this issue. To the extent Petitioner argues his PCR counsel was ineffective [ECF No. 23 at 15–16, 18], this argument is insufficient to constitute cause for procedural default or undue prejudice from an alleged constitutional violation. Petitioner cannot "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See Martinez v. Ryan,* 132 S.Ct. 1309, 1318–20 (2012).

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the trial, the solicitor presented the facts recited in the Factual Background section above and the jury determined Petitioner was guilty of criminal sexual conduct, first degree. The record makes an assertion of actual innocence not credible. The undersigned finds Petitioner has failed to meet his burden of demonstrating actual innocence, and therefore, the procedural bar applies to claims raised in Ground One.

### 3. Merits Review

In Ground Two, Petitioner argues his defense counsel was ineffective for failing to adequately advise him of his right to testify on his own behalf. [ECF No. 1 at 7]. During the PCR hearing, Petitioner testified he told Lee he wanted to testify, but she told him he could not testify because he would be impeached with his second degree burglary conviction. [ECF No. 14-2 at 239, 247–48]. Petitioner alleges Lee did not tell him it was his decision to testify, and argues he and his trial counsel did not discuss whether he would testify after the judge ruled his burglary conviction could be used to impeach him.

*Id.* at 239, 247.

The PCR court permitted Petitioner to proffer the testimony he would have offered during his trial. *Id.* at 240–41. Petitioner testified at PCR he did not rape the victim. *Id.* at 239. He stated the victim came to his home and he and the victim spent a couple of hours talking and drinking. *Id.* at 241–45. Petitioner testified he gave the victim a foot rub and she put her foot in his lap and "took her foot and kept playing with [his] private parts." *Id.* at 244. He claimed the victim stated "if we going to do something, you might as well come on and do it, she said, because it feel like [her] period might be coming on anytime." *Id.* Petitioner stated that victim's abrasion came from his cell phone not being where it was supposed to be because the victim had looked through his phone. *Id.* at 244–45. He stated he asked the victim to leave around 6 p.m. *Id.* at 245. Petitioner alleged "[a]t this time she walked out, went down the street, called the police and told the police [he] had raped her." *Id.*

LaFave testified that Lee was originally assigned to Petitioner's case and she was brought in as co-counsel. [ECF No. 14-3 at 3]. [5] LaFave testified she and Lee met with Petitioner before his trial, but she could not recall how many times they met with him. *Id.* LaFave stated she talked to Petitioner about testifying, and Petitioner "did express an interest in testifying at his trial." *Id.* at 6. LaFave alleged she did not fully advise Petitioner of his right to testify, and stated she was not present for any discussion Lee had with Petitioner regarding his right to testify. *Id.* In response to a question regarding

---

[5] The PCR court noted Lee relocated to England after Petitioner's trial and "has rendered herself incapable of being reached to provide testimony in the matter." [ECF No. 14-3 at 34].

whether the admissibility of Petitioner's burglary conviction for impeachment purpose

was a big issue, LaFave stated she could not recall specifically for Petitioner's case. *Id.* at

6–7. LaFave explained "that prior burglary convictions are always a concern" if a witness

can be impeached with the conviction, and she would be concerned if there were multiple

charges that could be used for impeachment purposes. *Id.* at 7. LaFave testified when she

was trying a case she

> would have numerous discussion about the Defendant's right to testify.
> And [she] personally did have that conversation with the clients that [she]
> represented . . . [She] just didn't have occasion to do it in this case.

*Id.* at 12–13.

The PCR court found Petitioner failed to prove his counsel was ineffective. *Id.* at

35. Specifically, the PCR court found:

> Having heard the testimony Applicant *would have* presented to the jury had
> he taken the stand in his defense, this Court can find no reasonable
> probability the outcome of the case would have been different had
> Applicant testified. Applicant's testimony, including his rendition of the
> how the incident occurred, is wholly **not** credible and would have done
> nothing to persuade the jury to find him not guilty of the charges.
> Applicant's demeanor, delivery and substantive testimony firmly convince
> this Court that Applicant would have only further damaged his chances of
> acquittal had he taken the stand before the jury.
>
> This finding is only further established when taken in conjuncture with the
> introduction of Applicant's prior Burglary conviction. Therefore, this Court
> can find no reasonable probability that, had counsel been adequately
> advised of his right to testify and chosen to exercise that right, the outcome
> of trial would have been different. Accordingly, this Court finds Applicant
> has failed to prove resulting prejudice. See Strickland v. Washington, 466
> U.S. at 697, 104 S.Ct. at 2069 ("[T]here is no reason for a court deciding an
> ineffective assistance claim to . . . address both components of the inquiry if
> the defendant makes an insufficient showing of one; [i]n particular, a court
> need not determine whether counsel's performance was deficient before

examining the prejudice suffered . . . as a result of the alleged deficiencies.").

Additionally, while unnecessary given the above finding, this Court notes Applicant has failed to sufficiently carry his burden in proving counsel's performance was deficient or otherwise objectively unreasonable. The record before this Court clearly reflects the introduction of Applicant's prior conviction for impeachment purposes was a critical concern of counsel's as she made repeated, vigorous arguments against its introduction throughout the course of the trial. With those portions of the record in mind, this Court finds [it is] highly unlikely Applicant's right to testify was never once discussed with him, and Applicant's testimony to that end are **not** credible to this Court. While the trial judge did not affirmatively advise Applicant of that right on the record, the case law is clear such an on record waiver of the right to testify is not always necessary. See Brown v. State, 340 S.C. 590, 533 S.E.2d 308 (2000). Further, it is not objectively unreasonable for trial counsel to await the trial court's ruling on the admissibility of a prior conviction at trial to advise a defendant whether to testify or not, and the record reflects counsel requested additional time after the state rested to discuss the right to testify with Applicant. (Trial Tr. p. 281). Accordingly, this Court finds no credible evidence to either confirm or deny Applicant was ever advised of that right and, therefore, Applicant has failed to carry his burden in proving such.

Regardless of the deficiency finding, this Court adheres to the above finding that Applicant would not have been a beneficial or credible witness at trial and, therefore, suffered no prejudice in failing to take the stand in his defense.

*Id.* at 35–36.

In his opposition to summary judgment, Petitioner appears to argue he is actually innocent of the criminal sexual conduct charge because the evidence collected from the victim's rape kit showed there was "none indication of evidence of rape discovered within the victim." [ECF No. 23 at 13]. Petitioner states:

As provided per the Petitioner with regards to Ground Two and supporting facts, the evidence which are discussed above does so corroborates

Petitioner's innocence a testimony from the Petitioner would have been supported by exculpatory evidence that which is discussed above.

*Id.* at 14.

Petitioner cannot satisfy the *Strickland* test. He has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding his ineffective assistance of counsel claims. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues. Based on the foregoing, Petitioner is not entitled to federal habeas relief on Ground Two, and the undersigned recommends Ground Two be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Respondent's motion for summary judgment. [ECF No. 13].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 16, 2015                                Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).